1
2
3
4
5
6
7

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOBBY RAMSEY, | )  Case No.: 1:12-cv-0377 AWI- BAM |
| Plaintiff, | )<br>)  **FINDINGS AND RECOMMENDATIONS** |
| v. | )  **REGARDING PLAINTIFF'S**<br>)  **SOCIAL SECURITY COMPLAINT** |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## INTRODUCTION

Plaintiff Bobby Ramsey ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act.[1]  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe, for findings and recommendations.

---

[1]     Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit.

1

**FACTS AND PRIOR PROCEEDINGS**

Plaintiff filed his first application for disability insurance benefits ("DIB") in 1994. Plaintiff subsequently applied for DIB again in 2000 and 2001 but was denied. On December 10, 2007, Plaintiff filed his current application for SSI alleging disability beginning January 1, 2005. AR 64.[2] Plaintiff's application was denied initially and on reconsideration. AR 64-68. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 32-55. ALJ Laura Speck Havens held a hearing on February 3, 2011, and issued an order denying benefits on February 17, 2011. AR 18-26. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-3. This appeal followed.

**Hearing Testimony**

The ALJ held a hearing on February 3, 2011 in Stockton, California. AR 18. Plaintiff appeared and testified. AR 18. He was represented by attorney Jeffrey Milam. AR 18. Impartial Vocational Expert ("VE") George A. Meyers also testified. AR 18.

Plaintiff was born on March 5, 1954 and was fifty-six years old at the time of the hearing. AR 36. He has a high school diploma and attended trade school for nine months to learn carpentry before dropping out. AR 36. Plaintiff testified that he has not worked since November 13, 2007 due to complications from his Hepatitis C, liver cirrhosis, coronary artery disease, high blood pressure, nerve damage and glaucoma. AR 36.

Over his fifteen year work history, Plaintiff testified that he worked as a carpenter for nine months, for a furniture company for six months, and he "tried working for [himself] for a little while." AR 37.[3] Plaintiff testified that he dressed and bathed himself daily, did household chores, washed dishes, and went grocery shopping without assistance. AR 38. He watched television for a couple of hours each day and walked for exercise. AR 39. Plaintiff testified that he no longer has a driver's license because the "county has it for child support." AR 39.

When asked about his impairments, Plaintiff testified that he occasionally smokes medical marijuana due to "nausea in the mornings," resulting from taking his medications all at once. AR 40.

---

[2]       References to the Administrative Record will be designated as "AR," followed by the appropriate page number.
[3]       Some gaps in Plaintiff's employment history can be attributed to intermittent incarceration. AR 317.

2

Plaintiff also stated that he goes to the doctor "whenever he asks me to go in," which was "every couple of months." AR 41.  He testified that he had glaucoma and that his doctor "said my eyes are doing fairly well because of the medication."  AR 43.  Plaintiff stated that he had a "constant dull pain" resulting from "the cirrhosis."  AR 45.  He alleged that he developed "chronic fatigue syndrome due to the hepatitis," that he is "more exhausted" than he would have been after a hard day of work as a mechanic, and that "sometimes I go straight to bed." AR 45.  Plaintiff stated that his liver disease is progressing but he had not obtained interferon treatments because "they tell me I'm passed that. I'm too far gone." AR 48-49.  He also stated that he was in the process of "being referred to another liver specialist." AR 49.  When asked whether doctors had discussed a liver transplant, Plaintiff testified "not yet." AR 49.

Thereafter, the ALJ elicited testimony of a vocational expert ("VE").  AR 49.  The ALJ asked the VE hypothetical questions, contemplating an individual who "can sit six hours out of an eight hour day, can stand six hours out of an eight hour day, and can walk six hours out of an eight hour day." AR 50. This individual could also "occasionally carry 50 pounds, frequently lift and carry 25, can only frequently climb, balance, stoop, kneel, crouch, and crawl." AR 50.  Additionally, he "must avoid concentrated exposure to dust, fumes, and smoke." AR 50-51. The VE testified that a person with such limitations would be able to perform jobs such as a cleaner, medium unskilled; dishwasher, medium, unskilled; or linen room attendant, medium, unskilled. AR 51.

Plaintiff's counsel then asked the VE to consider the same individual in the first hypothetical question except with the additional restriction that this individual could not perform more than occasional stooping, bending, kneeling, crouching, crawling.  AR 52.  The VE indicated that such an individual would be unable to perform work as a cleaner.  Such a person, however, could perform the linen room attendant or dishwasher positions, but those jobs would erode by 50 percent.  Plaintiff's counsel asked the VE to consider the same hypothetical individual but that person could only rarely do postural activities.  The VE indicated that such an individual would be unable to perform any work as it exists in the national economy.  Finally, on counsel's questioning, the VE indicated that a hypothetical individual who must use the bathroom on average one to times an hour, every hour, would be unable to perform any work as it exists in the national economy. AR 53.

1

**Medical Record**

2

The entire medical record was reviewed by the Court.  AR 197-838.  The medical evidence

3

will be referenced below as necessary to this Court's decision.

4

**The ALJ's Decision**

5

Using the Social Security Administration's five-step sequential evaluation process, the ALJ

6

determined that Plaintiff did not meet the disability standard.  AR 18-26.  More particularly, the ALJ

7

found that Plaintiff had not engaged in any substantial gainful activity since November 13, 2007.  AR

8

20.  Further, the ALJ identified hepatitis C, liver cirrhosis, obesity, diabetes, asthma, and lumbalgia as

9

severe impairments.  AR 20.  Nonetheless, the ALJ determined that the severity of the Plaintiff's

10

impairments did not meet or exceed any of the listed impairments.  AR 21.

11

Based on her review of the entire record, the ALJ determined that Plaintiff retained the residual

12

functional capacity ("RFC") to perform a wide range of medium work with limitations to frequent

13

balancing, stooping, kneeling, crouching, and crawling.  AR 21.[4]  Plaintiff is also limited to jobs that

14

avoid concentrated exposure to dust, fumes, and smoke.  AR 21.   The ALJ subsequently found that

15

Plaintiff was unable to perform his past relevant work.  AR 24.  However, based on Plaintiff age,

16

education, work experience, and RFC, the ALJ determined that significant jobs exist in the national

17

economy that Plaintiff could perform.  AR 24.  The ALJ therefore found that Plaintiff was not disabled

18

under the Social Security Act.  AR 25.

19

**SCOPE OF REVIEW**

20

Congress has provided a limited scope of judicial review of the Commissioner's decision to

21

deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this

22

Court must determine whether the decision of the Commissioner is supported by substantial evidence.

23

42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*,

24

402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112,

25

1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as

26

adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The record as a

27

28

[4]       "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects
weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

4

whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commission must apply the proper legal standards.  *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commission's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

<u>REVIEW</u>

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Here, Plaintiff argues that the ALJ erred in: (1) rejecting the examining physician's opinion that Plaintiff cannot stand or walk during the work day; (2) rejecting the opinion of his treating physician Dr. Morris; and (3) evaluating his credibility.

<u>DISCUSSION</u>[5]

**1.    The ALJ's Evaluation of the Medical Evidence as a Whole is Based on Substantial Evidence in the Record**

First, Plaintiff argues that the ALJ erred by failing adopt the opinion of Daniel Linares, M.D. that Plaintiff could not stand or walk during the work day.  Specifically, Dr. Linares concluded that

---

[5]    The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

Plaintiff could sit for 8 hours a day, but did not make a finding as to whether Plaintiff could stand or walk during the work day.  Plaintiff argues that Dr. Linares implicitly found that Plaintiff cannot stand or walk at all during the work day and is therefore limited to sedentary work.  According to Plaintiff, if Dr. Linares' findings were fully credited, a disability finding would be required under the Medical Vocational Guidelines due to Plaintiff's closely approaching advanced age of 56. Plaintiff speculates that the reason the ALJ rejected Dr. Linares' opinion and found that Plaintiff could perform the full range of medium work was to prevent paying benefits and not based on substantial evidence.  (Doc. 14 at 3-5).

### A.   Legal Standard

Cases in this Circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).  As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d at 647.  At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984).   As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician.  *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.  *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456.  In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor.  *E.g., Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).  For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians . . .."  *Magallanes*, 881 F.2d at 752.  Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion.  *Id.* at 751-52. The opinions of nonexamining physicians are substantial evidence where they are supported by clinical findings and objective tests.  *Id.*

### B.      The ALJ Correctly Weighed Dr. Linares' Opinion

With regard to Dr. Linares' opinion, the ALJ found:

> At the request of this agency, the claimant underwent a comprehensive internal medical evaluation on February 26, 2008, with Daniel Linares, M.D.  During the evaluation, the claimant reported neck pain that radiates down to his right knee, and bilateral weakness in his knees.  He also reported left hand pain.  Dr. Linares noted the claimant walked down the hall and into the room comfortably.  He was able to sit down with ease, and take his clothing including socks and shoes off.  However, he did struggle a little when getting out of the chair.  The claimant reported he was able to do all of his daily activities at home including housework.  His only reported limitation was he could only walk for half-hour.  Upon examination, there was evidence of a decrease in visual fields, primarily in the right eye.  The chest examination showed a significant gynecomastia.  There were significant red discolorations related to petechial.  On lower back examination, there was pain and decreased range of motion on flexion at approximately 90 degrees.  There was a positive leg raise on the right side at approximately forty five degrees.  His motor strength was 5/5 throughout.  Otherwise, his physical examination was unremarkable.  Dr. Linares diagnosed the claimant with liver cirrhosis, with stigmata showing petechial, gynecomastia, and ascites.  He also diagnosed the claimant with lumbalgia with right paravertebral tenderness, and possibly a herniated disc.  Dr. Linares found the claimant did not require any medically necessary assistive devices.  He found the claimant could be expected to lift and carry twenty-five pounds frequently and fifty pounds occasionally.  He found the claimant had postural limitations of frequent bending, stooping, and crouching.  He found the

claimant had no manipulative or workplace environmental limitations. This opinion is given great weight. However, the undersigned disagrees with the finding the claimant has no environmental limitations concerning exposure to dust, smoke, and fumes. Otherwise, the opinion is consistent with the other evidence in the record, it is based upon the evaluation and observations of the claimant, and is within the doctor's area of expertise.

AR 23.

Plaintiff's argument that the ALJ improperly rejected Dr. Linares' opinion that Plaintiff could not stand or walk during the workday is wholly unpersuasive. (Doc. 14 at 3). Dr. Linares did not make findings regarding standing and walking abilities; he did, however, discuss that Plaintiff could frequently bend, stoop, and crouch. AR 259-62. Dr. Linares also opined that Plaintiff could lift 25 pounds frequently and 50 pounds occasionally. Plaintiff's speculation that Dr. Linares implicitly opined that Plaintiff could not stand or walk during the work day is far-fetched, since one must stand to bend, stoop, and crouch or lift 50 pounds occasionally. It is a logical inference, which an ALJ is permitted to make, to conclude that Dr. Linares simply omitted a discussion of standing and walking from his assessment because Plaintiff was not limited in those functions. Plaintiff's argument makes an illogical inference. It is an illogical inference that by omitting a reference to standing and walking, Dr. Linares found that Plaintiff was unable to stand or walk. *See* AR 261-62; *Magallanes*, 881 F.2d at 755 (it was proper for the reviewing court to draw inferences from ALJ's decision; ALJ not required to recite "magic words"). The ALJ was entitled to give Dr. Linares' opinion "great weight" even though it omitted an assessment on Plaintiff's standing or walking abilities because it was consistent with the other evidence in the record.

By contrast, an extreme limitation that Plaintiff cannot stand or walk during the workday is unsupported by the record. As noted by the ALJ, reviewing physician, Ernest Wong, M.D., reviewed the evidence in the record and completed a Physical Residual Functional Capacity Assessment form. Like Dr. Linares, Dr. Wong found that "Plaintiff could lift and/or carry (including upward pulling) fifty pounds occasionally, and twenty-five pounds frequently." AR 23. Dr. Wong further found that:

The claimant could stand and/or walk (with normal breaks) for a total of about six hours in an eight hour workday. The claimant could sit (with normal breaks) for a total of about six hours in an eight hour work day. The claimant was unlimited in his ability to push and/or pull (including operation of hand/foot controls). The claimant was

limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling. The claimant had no manipulative, visual, or communicative limitations.

AR 23.

The ALJ gave Dr. Wong's opinion substantial weight because Dr. Wong's opinion was consistent with the other evidence in the record, and was based upon "a very thorough review of the evidence in the record." AR 23. Dr. Wong's opinion was also affirmed by R. Billington, M.D. AR 23. Even Plaintiff's treating physician found that Plaintiff could stand or walk "for four hours at one time." AR 24. Based on the evidence in the record, there is no reason to conclude that Dr. Linares found that Plaintiff was unable to stand or walk at all in a workday.

However, even assuming *arguendo* that Dr. Linares found that Plaintiff was limited to sitting during the work day, the ALJ was not required to adopt all of Dr. Linares' findings. An ALJ is not required to adopt all of an examining physician's assessments. *See e.g., Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989) (holding the ALJ is not required to adopt all of a physician's findings to find that his opinion contains substantial evidence). Indeed, no other physician found that Plaintiff was unable to walk or stand in an 8-hour work day. Further, by Plaintiff's own admission to Dr. Linares, he can walk for up to half an hour at a time. AR 259. A finding by Dr. Linares that Plaintiff could not stand or walk during an 8-hour work day would be inconsistent with the longitudinal record, and internally inconsistent with Dr. Linares' own opinion that Plaintiff could lift and carry twenty-five pounds frequently, and fifty pounds occasionally. It is not necessary for the ALJ to agree with everything an expert witness says in order to hold that his testimony contains substantial evidence, where the bases for the opinion were supported by objective medical evidence. *Magallanes*, 881 F.2d at 753. The ALJ is the "final arbiter with respect to resolving ambiguities in the evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-42 (9th Cir. 1995). Therefore, it would not be error for the ALJ to adopt Dr. Linares' opinion and disregard the alleged finding that Plaintiff could not stand or walk during the work day.

Finally, to the extent that Plaintiff contends that the ALJ "was obligated to recontact [Dr. Linares] to clarify any standing and walking limitations," it is similarly unpersuasive. Plaintiff bears the burden of providing evidence to prove that his impairments limit his functioning to the point of

disability. 42 U.S.C. § 423(d)(5)(A), 20 C.F.R. § 404.1512(c).  Nonetheless, "[i]n Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 2003). The ALJ's duty to develop the record further is triggered, however, only by ambiguous evidence, the ALJ's own finding that the record is inadequate, or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *also see Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (the ALJ has a duty to develop the record or "conduct an appropriate inquiry" when the evidence is ambiguous or the ALJ finds the record is not sufficient for him to evaluate the evidence and make a determination as to Plaintiff's alleged disability). Here, the record was sufficient for purposes of evaluating the evidence and making a disability determination as there was no ambiguity regarding Plaintiff's ability to stand or walk during the work day.  The ALJ properly relied on the findings by Dr. Linares, taken together with the opinions of reviewing physicians Drs. Wong and Billington.  There were no conflicts or ambiguities that had to be resolved.

In sum, the ALJ made a logical inference from the evidence in the record.  Dr. Linares did not make a finding on Plaintiff's ability to stand or walk.  The ALJ was entitled to rely on all of the medical evidence in the record, taken together, to assess Plaintiff's walking and standing abilities. Accordingly, the ALJ did not err in adopting Dr. Linares' opinion.

## 2. The ALJ Properly Rejected the Opinion of Plaintiff's Treating Physician

Second, Plaintiff contends the ALJ erred by failing to give sufficient reasons for rejecting the opinion of treating physician Dr. Delbert Morris, M.D. (Doc. 14 at 5).

### A. Legal Standard

In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir.2001); *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007).  *See also*, 20 C.F.R. § 404.1527(c)(1)-(2).  If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence in [the] case record, [it will be given] controlling weight."   20 C.F.R. § 404.1527(c)(2).

If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the Administration considers specified factors in determining the weight it will be given. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. *Id.* § 404.1527(c)(2)(i)-(ii).  Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of the Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record. *Id.* § 404.1527(c)(3)-(6).

The Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of a treating physician.  *Pitzer,* 908 F.2d at 506.  If contradicted by another doctor, the opinion of a treating or examining doctor can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews,* 53 F.3d at 1043.  "This burden can be met by providing a detailed summary of the facts and conflicting clinical evidence, along with a reasoned interpretation thereof." *Rodriguez v. Bowen,* 876 F.2d 759, 762 (9th Cir. 1989).

Notwithstanding the above discussion, an ALJ is not required to accept an opinion of a treating physician, or any other medical source, if it is conclusory and not supported by clinical findings. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  Additionally, an ALJ is not bound to a medical source's opinion concerning a claimant's limitations on the ultimate issue of disability. *Magallanes,* 881 F.2d at 751.  If the record as a whole does not support the medical source's opinion, the ALJ may reject that opinion.  *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1195 (9th Cir. 2004).  Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's

daily activities. *Id.; Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595 (9th Cir.1999).

> **B.**     **The ALJ Provided Specific and Legitimate Reasons to Discount Dr. Morris' Opinion**

Plaintiff began treating with Dr. Morris in 2008 after he was released from prison. The medical records indicate that Plaintiff visited Dr. Morris for the first time on February 6, 2008 to obtain lab work and an X-ray. AR 353.  On February 20, 2008, Plaintiff visited the Doctors Medical Center because he was experiencing a cough accompanied by pink-tinged phlegm. AR 364-70.  Plaintiff reported that "he went to see [Dr. Morris] a couple weeks ago . . . and the doctor said it was probably bronchitis and told him to stop smoking." AR 364.  Erik Lacy, M.D., noted that Plaintiff "actually thinks [his cough] is getting better" and "he tells me otherwise he is feeling fine." AR 364.  Plaintiff stated that he still smoked a "quarter pack of cigarettes per day." AR 364.  Dr. Lacy noted that Plaintiff had "what appears to be like a 1.5-cm annular nodule in his left lung field," and Plaintiff informed him that when he was incarcerated, it was the same size then, and had not grown.  AR 365. Dr. Lacy also found that Plaintiff's bronchitis was resolving, and that Plaintiff did not appear to have any physical evidence of arthritis. AR 364.

On February 29, 2008, Plaintiff visited Dr. Morris, reporting that he had been "vomiting blood" and coughing.  AR 352.  Dr. Morris noted that Plaintiff smoked one-half of a pack of cigarettes per day.  AR 352.  On March 20, 2008, Plaintiff was referred to Modesto Radiology Imaging, where he obtained a "high-resolution CT scan of the chest." AR 360-61.  The radiologist noted that there were two lobes which were "suspicious for neoplasm" and "two additional pulmonary nodules . . . [which might be] granulomatous disease [or] neoplastic disease." AR 361.  On April 16, 2008, Dr. Morris received Plaintiff's PET/CT scanning results of a PET/CT scan of Plaintiff's chest.  AR 350.

On May 7, 2008, Plaintiff visited Dr. Morris, who noted that Plaintiff "is overall feeling good." AR 349.  On October 7, 2009, Plaintiff visited Dr. Morris, who noted he was "doing good." AR 443, 552.  On January 19, 2010, Plaintiff's attorney called Dr. Morris to notify him that Plaintiff may be in prison for nine months and inquired how being incarcerated would affect treatment.  AR 443. Dr. Morris noted that Plaintiff was "last seen in Hep C clinic July 2009." AR 576.  At that time he was

not eligible for interferon treatment because he had not been sober for [more than six months] and had a low platelet count (possibly due to the alcohol consumption)." AR 576.

On July 23, 2010, Plaintiff visited Dr. Morris, who noted that Plaintiff last worked in 1998 and had been in and out of prison.  AR 548.  Plaintiff reported that he was feeling "good" and was doing "some" exercise.  AR 549.  On February 4, 2011, one day after the hearing before the ALJ, Dr. Morris filled out a questionnaire, wherein Dr. Morris responded "yes" to the question of whether Plaintiff had medical problems which prevented him from performing work.  AR 838.  Dr. Morris opined that Plaintiff's primary impairment was "Hep C." AR 838.   He also wrote "complaint of chronic fatigue" and "last worked 1998." AR 838.  When asked to provide objective findings upon which his opinion was based, Dr. Morris wrote one word: "lab."  Dr. Morris asserted that Plaintiff could sit for four hours at a time without rest or support, and stand and/or walk for four hours at a time without rest. Finally, Dr. Morris wrote "1998?" in response to the question of when Plaintiff had "been disabled to the degree set forth above." AR 838.

The ALJ afforded Dr. Morris' opinion "little weight" noting that Dr. Morris' completed a single check box form with answers to yes or no questions.  AR 24.  Dr. Morris did not identify or refer to any objective medical evidence that substantiated his opinion.  Moreover, his opinion was inconsistent with the treatment records.  There was also no evidence at the time that Dr. Morris completed his questionnaire that Dr. Morris had restricted Plaintiff in his activities.

A treating physician's medically supported opinion regarding the nature and severity of a disability claimant's impairments is generally given great weight. 20 C.F.R. § 404.1527(d)(2); *Orn v. Astrue*, 495 F.3d at 625; *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Even if a treating doctor's opinion is contradicted, an ALJ may disregard it only by giving specific and legitimate reasons for doing so that are supported by substantial evidence in the record. *Tonapetyan,* 242 F.3d at 1148.

Nonetheless, the ultimate determination of disability (*i.e.* whether a claimant can perform work in the national economy) rests solely with the Commissioner, and a physician's statement that a claimant is "unable to work" is not entitled to special weight. 20 C.F.R. 416.927(e); *see Tonapetyan*, 242 F.3d at 1148-49 (ALJ not bound by opinion of treating physician with respect to ultimate determination of disability); *Martinez v. Astrue,* 261 Fed.Appx 33, 35 (9th Cir. 2007) ("[T]he opinion

that [the claimant] is unable to work is not a medical opinion...[and] is therefore not accorded the weight of a medical opinion."). Moreover, an ALJ need not accept the opinion of any medical source, including a treating medical source, "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas,* 278 F.3d at 957; *accord Tonapetyan,* 242 F.3d at 1149.

The ALJ gave several specific and legitimate reasons for rejecting Dr. Morris' opinion. Here, the single check-box form, completed by Dr. Morris, is precisely the type of conclusory statement afforded no special weight in accordance with the Social Security regulations. Dr. Morris observed that Plaintiff could sit for four hours in a work day and stand or walk for four hours in a work day. However, Dr. Morris cites no medical findings in support of this assessment. *Id.* To support his finding he writes "lab" but does attach or cite any specific or general medical findings. *See* 20 C.F.R. § 404.1528; *Id.* § 404.1529. The form also offers no explanation as to what Plaintiff's disabling medical impairments are and no description of why or how his impairment prevents him from working. Moreover, the ALJ correctly noted that Dr. Morris' no-work statement was contradicted by his own treatment records. Dr. Morris provided Plaintiff with routine and conservative treatment, which consisted of routine check-ups and no indication of any functional limitations. As the ALJ stated, there is no indication that "at the time Dr. Morris completed the questionnaire that Dr. Morris had restricted the claimant in his activities." AR 24.

The only objective medical conclusion contained in Dr. Morris' medical source statement is his diagnosis of Plaintiff's Hepatitis C. AR 838. However, the mere diagnosis of Hepatitis C is not per se disabling; rather, "there must be proof of the impairment's disabling severity." *Sample v. Schweiker*, 694 F.2d 639, 642-43 (9th Cir. 1982); *see also McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) (finding that an impairment may affect individuals differently, and the ultimate determination of whether the impairment results in a disability is reserved to the Commissioner of Social Security).

Finally, the check-box form reflects an opinion by Plaintiff's doctor on an issue reserved to the Commissioner, and as such, it is not entitled to special weight. *Thomas*, 278 F.3d at 957. The ALJ noted that he considered Dr. Morris' conclusion that Plaintiff's limitations preclude him from working full time, but the ALJ was unable to rely on that conclusion because Dr. Morris cites little or no medical findings to support these limitations on the single-page form. The ALJ also noted that the

medical records did not support Dr. Morris' no-work finding.    These reasons were sufficient to reject Dr. Morris' opinion and were supported by substantial evidence. Accordingly, the Court finds no error in the ALJ's decision rejecting Plaintiff's treating physician's opinion.

**3.      Plaintiff's Credibility**

Finally, Plaintiff contends the ALJ gave insufficient reasons for rejecting his subjective complaints.   (Doc. 14 at 7).

**A.      Legal Standard**

A two-step analysis applies when considering a claimant's subjective symptom testimony. *Smolen,* 80 F.3d at 1281.   First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* at 1281-1282.   If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so.   *Id.* at 1281.   "An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment."   *Orn v. Astrue*, 495 F.3d at 635 (citation omitted).   When weighing a claimant's credibility, the ALJ may consider the claimant's reputation for truthfulness, inconsistencies in claimant's testimony or between his testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties about the nature, severity and effect of claimant's claimed symptoms. *Light v. SSA*, 119 F.3d 789, 792 (9th Cir. 1997).   The ALJ may consider "(1) ordinary techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities."   *Tommasetti,* 533 F.3d at 1039.   If the ALJ's finding is supported by substantial evidence, the Court may not second-guess his or her decision.   *Thomas,* 278 F.3d at 959.

**B.      The ALJ Gave Clear and Convincing Reasons For Finding Plaintiff's Subjective Symptom Testimony Not Credible.**

Here, the ALJ found that Plaintiff's "medically-determinable impairments can reasonably be expected to produce the alleged symptoms."   AR 22.   This finding satisfied step one of the credibility

analysis. *See Smolen*, 80 F.3d at 1281-1282. The ALJ then found that Plaintiff's "statements about the intensity, persistence, and limiting effects of those symptoms are not credible to the extent they are inconsistent with my assessment of her residual functional capacity." AR 22. To support this finding the ALJ found that Plaintiff's activities of daily living were inconsistent with symptoms of disabling pain. The ALJ also noted that Plaintiff's symptoms are largely controlled by the proper use of his medications and in lifestyle dietary modifications. AR 22.

The ALJ stated that Plaintiff had the ability to walk, shave, bathe, dress, sweep, do dishes, and do limited grocery shopping. AR 22. See 20 C.F.R. § 416.929(c)(3)(i); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (allegation of disability undermined by testimony about daily activities). In finding Plaintiff lacked credibility, the record establishes that there were inconsistencies between Plaintiff's activities of daily living as supported by his medical records, and Plaintiff's allegations of his activities of daily living as testified to at the hearing. At the hearing, Plaintiff testified that he had no hobbies and that he was "drowsy all the time." AR 38, 40. However, Plaintiff listed his profession as "mechanic," when he reported to Dr. Williams. Plaintiff also told Dr. Williams that "he spends his days hanging out at his sister's husband's machine shop, known as Yosemite Machines, where they produce hot rods." AR 259. Plaintiff told Dr. Linares that he was "able to do all daily activities at home including housework and hobbies." AR 259, 317, 682, 691. Moreover, Plaintiff stated that his "only complaint [with regard to his impairments' impact on activities of daily living] is that he is limited to a half-hour of walking." AR 259.

These activities demonstrate that Plaintiff was more functional than he claimed, undermining his credibility. *See Molina*, 674 F.3d at 1112; *see also Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (finding that the ALJ properly considered the claimant's activities in rejecting his credibility; although the claimant's activities did not suggest he could return to his past work, they did demonstrate that the claimant had greater functional capacity than he acknowledged in his written statements and testimony). Accordingly, the ALJ's credibility determination based on Plaintiff's activities of daily living was based on the proper legal standard and supported by the record.

Additionally, the ALJ noted that Plaintiff's conditions are controlled with the proper use of medications and in lifestyle and dietary modifications. The Court finds that this also constituted a

clear and convincing reason not to credit Plaintiff's subjective symptom testimony. *See, e.g., Tommasetti*, 533 F.3d at 1040 (evidence that plaintiff's diabetes was controlled by medication undermined plaintiff's claim that diabetes was among his disabling conditions); *Morgan*, 169 F.3d at 599 (ALJ's adverse credibility determination properly accounted for physician's report of improvement with medication); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (rejecting disability claim where claimant's pain and symptoms were fairly controlled by medications).

Finally, Plaintiff argues that the ALJ rejected his subjective complaint that he needed restroom breaks every hour. (Doc. 14 at 8). However, in rejecting Plaintiff's credibility the ALJ noted that Plaintiff failed to consistently present with alleged limitations to his treatment providers. Plaintiff's frequent need to use the restroom is not apparent in the record. On multiple occasions throughout his treatment history, Plaintiff had the opportunity to complain to his doctors of medication side effects. Plaintiff failed to mention a frequent need to use the restroom during these visits. In fact, Plaintiff does not reference a single instance in the record where this alleged restriction is mentioned prior to the administrative hearing. See AR 47. Accordingly, Plaintiff did not present this alleged limitation to his treatment providers and there is no substantial evidence in the record to support the existence of this impairment. Although the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, *Light*, 119 F.3d at 792, it is one factor which may be considered with others. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan*, 169 F.3d at 600. Because the ALJ found Plaintiff not credible for several reasons, the ALJ was free to discount Plaintiff's unsupported subjective complaint regarding restroom usage. *See Thomas*, 278 F.3d at 960; *see also Batson*, 359 F.3d at 1197.

Accordingly, the ALJ's credibility finding is supported by substantial evidence. "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas*, 278 F.3d at 959 (citing *Morgan*, 169 F.3d at 600).

## RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of

Social Security be DENIED and that JUDGMENT be entered for Defendant Carolyn W. Colvin and against Plaintiff Bobby Ramsey.

These findings and recommendations will be submitted to the district judge pursuant to the provisions of Title 28 of the United States Code section 636(b)(l). Within fifteen (15) days after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: __**August 28, 2013**__                    __/s/ Barbara A. McAuliffe__
                                                                  UNITED STATES MAGISTRATE JUDGE